UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY LUPE DE LOS SANTOS,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>Defendant. | No. 1:20-cv-00919-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 22, 23)** |

**I.     Introduction**

Plaintiff Anthony Lupe de los Santos ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1] *See* Docs. 22–23. After reviewing the record, the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

**II.    Factual and Procedural Background[2]**

On July 27, 2018 Plaintiff applied for disability insurance benefits alleging disability as of July 23, 2018. The Commissioner denied the application initially on June 5, 2019, and on reconsideration on September 20, 2019. AR 92, 99. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on February 4, 2020. AR 29–59. On April 1, 2020 the ALJ issued a decision denying Plaintiff's application. AR 12–28. The Appeals Council denied review on May 21, 2020. AR 1–6. On July 1, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 9 and 11.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

### III. **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 23, 2018.  AR 17.  At step two the ALJ found that Plaintiff had the following severe impairments: posttraumatic stress disorder, depression, obsessive compulsive disorder, degenerative disc disease, and carpal tunnel syndrome.  AR 17.  The ALJ also determined at step two that Plaintiff had the following non-severe impairments: diabetes mellitus, hypertension, sleep apnea, varicose veins, tinnitus, obesity, alcohol use disorder, status post mass excised from thigh, and pancreatitis.  AR 17–18.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 18.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) with some postural limitations and the following mental limitations: simple and routine tasks, routine work related decision-making, occasional contact with supervisors and coworkers, no contact with the general public and a 10 minute break every 2 hours.  AR 19–23.

At step four the ALJ concluded that Plaintiff could not perform his past relevant work as an insurance benefits clerk, customer complaints clerk, or customer service representative.  AR 23.

At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: hand packager, crate liner, and cleaner II. AR 24. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since his alleged onset date of July 23, 2018. AR 24.

## V. Issues Presented

Plaintiff asserts one claim of error: that the ALJ erred by failing to adopt Dr. Portnoff's identified limitations, or explain the basis for rejecting the same. Br. at 1, Doc. 22.

### A. Dr. Portnoff's Opinion

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also*

20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

### 2. **Analysis**

On May 3, 2019, Dr. Portnoff conducted a consultative psychiatric examination of Plaintiff at the request of the agency. AR 518–22. Dr. Portnoff identified diagnoses of PTSD, major depressive disorder, and OCD. AR 521. He opined Plaintiff had no limitations with respect to: detailed and complex tasks, ability to accept instructions from supervisors, and ability to work on a consistent basis without special or additional instruction. AR 521. He opined Plaintiff had mild to moderate limitations in his ability to interact with coworkers and the public. AR 521. He opined that Plaintiff had moderate limitations in his ability to: deal with the stress encountered in a competitive work environment; complete a normal workday/workweek without interruptions from a psychiatric condition; and, maintain regular attendance in the workplace. AR 521–22.

After summarizing Dr. Portnoff's examination findings and associated opinion, the ALJ

offered the following discussion:

> I find that these limits are fairly consistent with the overall record. I note that Dr. Portnoff did not provide specifics on the claimant's functional ability, but I have interpreted his findings to support limits on contact with others. In additional, I find that limits on complex work are consistent with and supported by the claimant's continued depression and anxiety.

AR 22.

Dr. Portnoff provided the lone examining psychiatric opinion in the record. Plaintiff's physical limitations are not in dispute. Further, the extent to which Dr. Portnoff's identified limitations are supported by the medical evidence, or the broader record, is also not in dispute. The parties exchanged roughly three pages of argumentation each (with no reply brief filed) which can be distilled down to two substantive questions, one legal and one factual: 1) whether the ALJ was required to account for (or explain the basis for rejecting) each of Dr. Portnoff's identified limitations and, 2) whether the ALJ did so.

Plaintiff contends the ALJ erred insofar as the ALJ purported to find Dr. Portnoff's opinion fairly consistent with the overall record, but "wholly failed to explain his interpretation of the opinion and why the RFC does not contain limitations consistent with Plaintiff's difficulty maintaining attendance, completing a work week, or dealing with stress as opined by Dr. Portnoff." Br. at 7.

In response, Defendant argues that the ALJ "was not required to individually reference each limitation noted in Dr. Portnoff's report." Resp. at 6 (citing *Lewis v. Colvin*, 2015 WL 4164682, at \*4-5 (C.D. Cal. Jul. 9, 2015); *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)). However, Defendant's reliance on *Lewis* and *Howard* is misplaced. As to the former (*Lewis*), this is an unpublished district court opinion predating the March 2017 regulatory changes applicable here which require the ALJ to specifically articulate how the factors of supportability and consistency were considered in evaluating each opinion. 20 C.F.R. § 404.1520c(c). There is no reason to

believe that requirement does not equally apply to the limitations identified in the opinion.

*Howard* explained that "the ALJ is not required to discuss evidence *that is neither significant nor probative*." *Howard*, 341 F.3d at 1012 (emphasis added). And, as the Ninth Circuit explained in *Vincent*, even though an ALJ "need not discuss all evidence presented," the ALJ must explain why "significant probative evidence has been rejected." *Vincent ex rel. v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

As the only examining psychiatric opinion in the record, Dr. Portnoff's opinion and the limitations identified therein were undoubtedly probative of Plaintiff's mental RFC. The ALJ's description of Dr. Portnoff's opinion as "fairly consistent" with the record is somewhat of a hedge insofar as it does not necessarily reflect an intention to embrace all the limitations identified therein. However, given that the ALJ provided no additional language or reasoning for rejecting the limitations identified therein (nor does Defendant contend that the ALJ did), the Court will presume the ALJ intended to accept the same.

"Where the ALJ accepts the medical assessment of moderate limitations, those limitations must be accounted for in the RFC." *Wascovich v. Saul*, 2:18-CV-659-EFB, 2019 WL 4572084, at *4 (E.D. Cal. Sept. 20, 2019) (citing *Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013).

"This does not necessarily mean that the ALJ was required to explicitly transcribe the limitation in the RFC. Rather, he is required to account for it in his 'translation.'" *Wascovich*, 2019 WL 4572084 at *5; *Rounds v. Commissioner of Social Security Administration*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Accordingly, the only remaining question is whether the ALJ accounted for Dr. Portnoff's identified limitations via concrete restrictions in the RFC.

To begin, the ALJ limited Plaintiff to simple and routine tasks. Notably, despite the ALJ's

suggestion to the contrary, Dr. Portnoff did not in fact identify task complexity limitations. As Plaintiff emphasizes, the ALJ misread the opinion in this regard. AR 22 ("I find that limits on complex work are consistent with and supported by the claimant's continued depression and anxiety."). This perhaps tends to undermine the notion that the ALJ understood and translated the opinion properly. Nevertheless, at least as to task complexity, the ALJ's RFC was more restrictive than Dr. Portnoff's opinion. Thus at this point there is no basis to find harmful error.

Second, the ALJ limited Plaintiff to occasional contact with supervisors and coworkers and no contact with the general public, limitations the VE testified were not work preclusive. AR 19, 54. This was a sufficient translation of Dr. Portnoff's opinion that Plaintiff was mildly to moderately limited in his ability to interact with coworkers and the public. AR 521.

Third, the ALJ's RFC reflects that Plaintiff would need a ten-minute break every two hours, a limitation the VE also testified was not work-preclusive. AR 54. Plaintiff suggests this was an inadequate translation of Dr. Portnoff's identified limitations in dealing with work stressors and completing a workday/workweek without interruptions from a psychiatric condition. Although there is no controlling authority directly on point, there is some case law supporting the notion that a limitation to simple routine tasks (the first restriction from the ALJ's RFC) encompasses low stress tolerance. *See, e.g.*, *Henry v. Colvin*, No. 1:15-cv-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (simple tasks encompasses low stress tolerance); *Keller v. Colvin*, No. 2:13-cv-0221-CKD, 2014 WL 130493, at *3 (E.D. Cal. Jan. 13, 2014) (simple, repetitive tasks "appropriately captured" physician's opinion that claimant required "low stress settings")).

As described below, the weight of the authority holds that a limitation to simple routine tasks is not a catchall encompassing other limitations. But here the Court finds that the combination of a limitation to simple and routine tasks, and a ten-minute break every two hours, was a reasonable translation of Dr. Portnoff's opinion that Plaintiff was moderately limited in his ability to complete

a normal workday/workweek without interruptions from a psychiatric condition, and deal with work stressors. Plaintiff identifies no authority to the contrary, nor does Plaintiff propose what additional limitations might have been appropriate to account for those limitations.

This leaves one limitation, namely Dr. Portnoff's opinion that Plaintiff was moderately limited in his ability to maintain attendance. None of the three above-referenced restrictions in the ALJ's assessed RFC relate directly to attendance. Courts have occasionally relied on the Ninth Circuit's opinion in *Stubbs-Danielson* for the proposition that a limitation to simple and routine tasks can serve as a catchall for moderate mental limitations insofar as *Stubbs* held that an ALJ appropriately translated "pace and the other mental limitations regarding attention, concentration, and adaption" into "the only concrete restrictions available to him," namely a limitation to simple tasks. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Other courts have distinguished the limitations at issue in *Stubbs* from those at issue here, including attendance limitations. The case law in this circuit is split but tends to favor the view that a restriction to simple/routine tasks is not a catchall and does not account for limitations such as maintaining attendance. *See Macias v. Saul*, No. 1:19-CV-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases, and holding that a limitation to simple/routine tasks does not account for moderate limitations in maintain attendance and completing an 8-hour workday); (*Wascovich*, 2019 WL 4572084 at *5 (E.D. Cal. Sept. 20, 2019) (simple and routine task limitation does not account for moderate limitations in maintaining attendance); *Donna M. v. Saul*, No. 19-CV-03134-DMR, 2020 WL 6415601, at *4 (N.D. Cal. Nov. 2, 2020) (noting limitation to simple, routine tasks with no public interaction in RFC failed to address other moderate limitations, such as plaintiff's ability to relate to and interact with coworkers, associate with day-to-day work activity, maintain regular attendance in the workplace, and perform work activities on a consistent basis without special or additional supervision); *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL

1492661, at *4 (E.D. Cal. Mar. 27, 2020) (rejecting argument that RFC determination that plaintiff could sustain work involving simple, repetitive tasks adequately captured moderate limitations in maintaining regular attendance, completing a normal workday or work week without interruption from a psychiatric condition, and handling normal work-related stress); *Christopher G. v. Saul*, No. 2:19-CV-06150-AFM, 2020 WL 2079972, at *6 (C.D. Cal. Apr. 30, 2020); *Flores v. Saul*, No. 1:18-CV-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal. Jan. 31, 2020); *but see Messerli v. Berryhill*, No. 1:16–cv–00800–SKO, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017) (finding limitation to "simple repetitive tasks" accounted for moderate limitations in ability to accept instructions, interact with coworkers and the public, maintain attendance, complete a normal workday/workweek without interruptions, and moderate to serious limitations in her ability to deal with work stress); *Calisti v. Colvin*, 2015 WL 7428724, at * 7 (E.D. Cal. Nov. 23, 2015); *Schmidt v. Colvin*, No. 2:12-cv-00016-KJN, 2013 WL 5372845, at *17 (E.D. Cal. Sept. 25, 2013).

Again, the weight of authority here suggests that a limitation to simple and routine tasks does not account for attendance limitations. The other limitations the ALJ included here (social interaction and frequent breaks) do not relate to attendance and do not reflect the ALJ attempt to translate the attendance limitations Dr. Portnoff identified.

Nevertheless, the Court cannot find this to be harmful error. None of the above-cited cases provide any guidance on how an ALJ, as a practical matter, ought to translate a moderate attendance limitation into the RFC. Nor does Plaintiff identify any authority or explain what restriction he believes was warranted. As the ALJ noted, Dr. Portnoff did not offer additional specifics and, as Defendant notes, Dr. Portnoff did not quantify the attendance limitations.

Maintaining attendance within customary tolerances is indeed a mental ability required for the performance of any job. *See* POMS DI DI 25020.010, Mental Limitations, *available at https://secure.ssa.gov/poms.nsf/lnx/0425020010.* Unlike other mental limitations, however, an

attendance limitation does not readily lend itself to a qualitative description, though the consultative examiners retained by the agency almost exclusively describe the limitation in qualitative form. By comparison, the agency's pre-printed residual functional capacity questionnaires completed by treating physicians (also known as medical source statements) typically address the issue quantitatively, if at all, asking the physician how many days per month the claimant will be absent from work.

There is no basis to presume that, by "moderate" attendance limitations, Dr. Portnoff was opining that Plaintiff would be unable to maintain attendance within customary tolerances.[3] Nor would it be logical to assume as much, as such an opinion would moot any remaining discussion of Plaintiff's mental functioning. Irrespective of any limitations regarding task complexity, social interaction, or accepting supervisorial instruction, a claimant can either maintain attendance within customary tolerances or he cannot. If he cannot, he is not employable. If he can, there is no reason to believe that the number of days he is absent from work otherwise impacts his ability to meet the mental demands of work in the instances when he is physically present at work.

As noted in the caselaw cited above, courts have often remanded in instances where an attendance limitation was one of many limitations the ALJ failed to properly translate into RFC restrictions. However, there are few examples, if any, where a court has remanded to the ALJ solely for the purpose of translating a moderate attendance limitation into the RFC. Moreover, Plaintiff does not identify (nor is the Court aware) of any example or guiding principle illustrating

---

[3] Defendant also underscores that the agency defines "moderate" as "more than a slight limitation in this area but the individual is still able to function satisfactorily." HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-1152-U3 (Medical Source Statement of Ability to do Work-related Activities (Mental) (emphasis added). Defendant also underscores caselaw similarly finding. *See also e.g., Rose M. E. v. Saul*, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) ("SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'"). As it relates to the ALJ's allegedly insufficient translation of the moderate attendance limitation, Plaintiff provided no rebuttal in reply. Accordingly, the Court cannot find that Plaintiff met his burden on this point to identify harmful error. But, to the extent Defendant is arguing that an ALJ can either ignore moderate mental limitations or use "simple and routine tasks" as a catchall limitation, the Court disagrees with both propositions based on the caselaw identified above.

how an ALJ would go about doing so.  Accordingly, there is no basis to find harmful error here.

### VI. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Anthony Lupe de los Santos.

IT IS SO ORDERED.

Dated:   **May 14, 2022**                           **/s/ Gary S. Austin**
                                                                    UNITED STATES MAGISTRATE JUDGE